FILED
IN THE UNITED STATES DISTRICT COURT DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA DISTRICT OF NE     ASKA

07 JAN -9 PM 2: 22

OFFICE OF THE CLERK

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 8:07CV14 |
| | ) |
| THE CITY OF WAKEFIELD, NEBRASKA, and | ) |
| M.G. WALDBAUM CO., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF LODGING OF CONSENT DECREE BETWEEN THE UNITED STATES AND DEFENDANT THE CITY OF WAKEFIELD, NEBRASKA

Plaintiff, the United States of America, respectfully informs the Court and all parties of

the lodging of a consent decree in the above-captioned case. No other action is required by the

Court at this time.

Final approval by the United States and entry of this Consent Decree is subject to the

Department of Justice's requirements set forth at 28 C.F.R. § 50.7 which provides, inter alia, for

notice of the lodging of this consent decree in the Federal Register, an opportunity for public

comment, and consideration of any comments.

After the close of the comment period and review of any new information by the

Department of Justice, we will contact the Court with respect to any future action regarding the

UNITED STATES' NOTICE OF LODGING
OF CONSENT DECREE WITH WAKEFIELD - PAGE 1



entry of this Consent Decree.

Date: January 9, 2007                    Respectfully submitted,

                                        United States Department of Justice
                                        Environment and Natural Resources Division


                                        /S ERIKA M. ZIMMERMAN
                                        ERIKA M. ZIMMERMAN
                                        Trial Attorney, Oregon Bar No. 05500
                                        Environment and Natural Resources Division
                                        Environmental Enforcement Section
                                        United States Department of Justice
                                        PO Box 7611, Ben Franklin Station
                                        Washington, DC 20044
                                        erika.zimmerman@usdoj.gov
                                        Telephone:  (202) 514-5270
                                        Facsimile:  (202) 514-4180


                                        s/ LAURIE A. KELLY
                                        LAURIE A. KELLY
                                        Assistant United States Attorney, Mass. Bar No. 557575
                                        District of Nebraska
                                        1620 Dodge Street
                                        Suite 1400
                                        Omaha, Nebraska 68102-1506
                                        Telephone: (402) 661-3700
                                        Fax: (402) 661-3081
                                        laurie.kelley@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Notice of Lodging of Consent Decree to be sent by Federal Express on January 9, 2007 to:

Mark A. Fahleson
REMBOLT LUDTKE, LLP
1201 Lincoln Mall, Suite 102
Lincoln, Nebraska 68508

s/ LAURIE A. KELLY
LAURIE A. KELLY

UNITED STATES' NOTICE OF LODGING
OF CONSENT DECREE WITH WAKEFIELD - PAGE 3

# ORIGINAL CONSENT DECREE
# FOR
# LODGING WITH
# THE CLERK'S OFFICE

# DO NOT DESTROY

# ORIGINAL CONSENT DECREE
# WILL BE RETURNED TO
# THE U.S. ATTORNEY'S OFFICE
# UPON THE FILING OF THE
# CONSENT DECREE BY THE
# U.S. DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEBRASKA


| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, and<br>THE STATE OF NEBRASKA, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. [$8:07CV14$ |
| | ) | |
| THE CITY OF WAKEFIELD, NEBRASKA, | ) | |
| A Municipal Corporation | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |


**CONSENT DECREE**

## TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 2 |
| II. | APPLICABILITY | 3 |
| III. | DEFINITIONS | 4 |
| IV. | CIVIL PENALTY | 6 |
| V. | COMPLIANCE REQUIREMENTS | 8 |
| VI. | PROHIBITION ON TREATMENT OF M.G. WALDBAUM CO. WASTEWATER | 9 |
| VII. | MONITORING AND RECORD KEEPING REQUIREMENTS | 9 |
| VIII. | REPORTING REQUIREMENTS | 10 |
| IX. | STIPULATED PENALTIES | 13 |
| X. | FORCE MAJEURE | 16 |
| XI. | DISPUTE RESOLUTION | 18 |
| XII. | INFORMATION COLLECTION AND RETENTION | 21 |
| XIII. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 23 |
| XIV. | COSTS | 24 |
| XV. | NOTICES | 24 |
| XVI. | EFFECTIVE DATE | 27 |
| XVII. | RETENTION OF JURISDICTION | 27 |
| XVIII. | MODIFICATION | 27 |
| XIX. | TERMINATION | 27 |

-ii-

XX.    PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XXI.   SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XXII.  INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XXIII. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

WHEREAS, Plaintiff, the United States of America (United States), on behalf of the United States Environmental Protection Agency (EPA), along with the State of Nebraska, have filed Complaints in this action concurrently with this Consent Decree alleging that Defendant, City of Wakefield, Nebraska (Wakefield), has violated Sections 301, 307, and 402 of the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act , 33 U.S.C. §§ 1311, 1317 and 1342, and implementing regulations thereunder at 40 C.F.R. Part 403.

WHEREAS, Wakefield is a municipal corporation organized and existing under the laws of the State of Nebraska. Wakefield owns and operates a lagoon wastewater treatment plant, which is a publicly owned treatment works (POTW or Facility), located within Section 33, Township 27N, Range 5E, Dixon County, Wakefield, Nebraska. Five lagoons are dedicated to treatment of municipal wastewater. During all times relevant to the Complaints, nine lagoons were dedicated to treatment of industrial wastewater, eight of which were transferred to M.G. Waldbaum Co. effective April 1, 2006, at which time M.G. Waldbaum Co. became the sole owner and operator of the eight industrial lagoons.

WHEREAS, the Complaints allege that Defendant has operated its POTW in violation of the requirements of Sections 301, 307, and 402 of the Act, 33 U.S.C. §§ 1311, 1317 and 1342, and 40 C.F.R. § 403.5(c)(2). These alleged violations include Defendant's failure to comply with the conditions and limitations of its National Pollutant Discharge Elimination System (NPDES) Permit Number NE0049018 for the POTW, issued under Section 402 of the Clean Water Act, 33 U.S.C. § 1342, and Defendant's failure to require M.G. Waldbaum Co. to comply with

1

pretreatment standards, limitations and conditions, pursuant to Section 307 of the Clean Water
Act, 33 U.S.C. § 1317, and 40 C.F.R. § 403.5(c)(2).

WHEREAS, the State of Nebraska (State) has been joined as a Plaintiff in this action,
thereby satisfying the requirements of Section 309(e) of the Clean Water Act, 33 U.S.C.
§ 1319(e). Plaintiff, the State, is filing a complaint in intervention concurrently with this Consent
Decree.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds,
that this Consent Decree has been negotiated by the Parties in good faith, will avoid litigation
between the Parties, and is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, and without any admission of fact
or law, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28
U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b) of the Clean Water Act, 33 U.S.C.
§§ 1319(b), and over the Parties. Venue lies in the District of Nebraska pursuant to 309(b) of the
Clean Water Act, 33 U.S.C. §§ 1319(b) and 28 U.S.C. §§ 1391(b) and 1395(a), because
Defendant resides and is located in this judicial district and the violations alleged in the
Complaints occurred in this judicial district. For purposes of this Consent Decree, or any action
to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent
Decree or such action and over Defendant, and consents to venue in this judicial district.

2

2. For purposes of this Consent Decree, Defendant agrees that the Complaints state claims upon which relief may be granted pursuant to Sections 301, 307, and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1317 and 1342, and 40 C.F.R. Part 403.

3. Notice of the commencement of this action has been given to the State pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

## II. APPLICABILITY

4. The obligations of this Consent Decree apply to and are binding upon the United States, the State, and upon Defendant and any successor or other entities or persons otherwise bound by law.

5. Any transfer of ownership or operation of the Facility to any other person, prior to termination or revocation of Defendant's EPA NPDES Permit Number NE0049018 and Termination of this Consent Decree pursuant to Section XIX, must be conditioned upon the transferee's agreement to undertake the obligations required by this Consent Decree, as provided in a written agreement between Defendant and the proposed transferee, enforceable by the United States and the State as third-party beneficiaries of such agreement. At least thirty (30) days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA, Region VII, the United States Department of Justice, and the State of Nebraska, in accordance with Section XV of this Consent Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree. No transfer of

3

ownership or operation of the Facility, whether in compliance with this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Consent Decree are implemented.

6. Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7. In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, successors, assigns, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

8. Terms used in this Consent Decree that are defined in the Clean Water Act, or in regulations promulgated pursuant to the Clean Water Act, shall have the meanings assigned to them in the statutes or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

    a. "Consent Decree" or "Decree" shall mean this Decree;

    b. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall

4

on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

      c.    "Defendant" shall mean the City of Wakefield, Nebraska;

      d.    "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

      e.    "Facility" shall mean Defendant's municipal wastewater treatment facility located in Wakefield, Nebraska, but shall not include the industrial lagoons that were transferred by Defendant to M.G. Waldbaum Co. effective April 1, 2006;

      f.    "NDEQ" shall mean the Nebraska Department of Environmental Quality, which is the agency authorized to administer the NPDES program in Nebraska under the provisions of Section 402(b) of the Clean Water Act, 33 U.S.C. § 1342(b);

      g.    "NPDES" shall mean the National Pollutant Discharge Elimination System authorized under Section 402 of the Act, 33 U.S.C. § 1342;

      h.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral;

      i.    "Parties" shall mean the United States, the State of Nebraska, and Defendant;

      j.    "POTW" shall mean a publicly owned treatment works as defined at 40 C.F.R. § 403.3. For purposes of this Consent Decree, "Defendant's POTW" shall mean the same as "Facility";

5

      k.     "Section" shall mean a portion of this Consent Decree identified by a

Roman numeral;

      l.     "Site"  The location of the Site begins at the City's outfall structure along

Logan Creek and includes all of the lagoons at the City's Facility;

      m.     "State" shall mean the State of Nebraska; and

      n.     "United States" shall mean the United States of America, acting on behalf

of EPA.

## IV. CIVIL PENALTY

      9.     Defendant shall pay the sum of Nine Thousand and Three Hundred Dollars

($9,300.00) as a civil penalty to the United States. Such amount shall be paid in three (3)

installments, specifically (a) Three Thousand Dollars ($3,000.00) within thirty (30) days of the

Effective Date of this Consent Decree, (b) Three Thousand and Five Hundred Dollars

($3,500.00) on or before April 1, 2008 (representing a penalty amount of $3,281.25 and interest

at a rate of 5% from January 1, 2007 to the due date), and (c) Three Thousand and Five Hundred

Dollars ($3,500.00) on or before September 30, 2009 (representing a penalty amount of

$3,018.75 and interest at a rate of 5% from January 1, 2007 to the due date). Payments shall be

made by certified or cashier's checks made payable to the "U.S. Department of Justice,"

referencing the name and address of Defendant and DOJ case number 90-5-1-1-08346.

Defendant shall send the checks to the Financial Litigation Unit of the United States Attorney's

Office for the District of Nebraska, at 1620 Dodge Street, Suite 1400, Omaha, Nebraska, 68102-

1506. Any payments received by the United States after 4:00 p.m. Eastern Time shall be

6

credited on the next business day. At the time of payment, Defendant shall simultaneously send written notice of payment and a copy of any transmittal documentation, which should reference DOJ case number 90-5-1-1-08346, to the United States and EPA in accordance with Section XV of this Consent Decree (Notices).

10. Defendant shall pay the sum of Ten Thousand Dollars ($10,000.00) as a civil penalty to the State of Nebraska. Such amount shall be paid in three (3) installments, specifically (a) Three Thousand Dollars ($3,000.00) within thirty (30) days of the Effective Date of this Consent Decree, (b) Three Thousand and Five Hundred Dollars ($3,500.00) on or before April 1, 2008, and (c) Three Thousand and Five Hundred Dollars ($3,500.00) on or before September 30, 2009. Payment of the civil penalty and any accrued interest, made payable to the "State of Nebraska," shall be delivered to:

> Jodi Fenner
> Assistant Attorney General
> Chief, Agriculture, Environment, and
> Natural Resources Division
> 2115 State Capitol Building
> Lincoln, Nebraska 68509-8920

11. If Defendant fails to pay the civil penalties required to be paid under Section IV of this Consent Decree (Civil Penalty) when due, interest shall accrue on any amounts overdue to the United States under the terms of this Consent Decree at the rate established by the Secretary of the Treasury pursuant to 28 U.S.C. §1961. Interest shall accrue on any amounts overdue to the State under the terms of this Consent Decree pursuant to Nebraska Code § 45-103. Interest is to be paid from the date said payment is due until all amounts owed are paid. Late payment of the civil penalty including accrued interest shall be made in accordance with Section IV,

7

Paragraphs 9 and 10, above. All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree, as applicable, and shall include the identifying information set forth in Paragraphs 9 and 10, above.

## V. COMPLIANCE REQUIREMENTS

12. Defendant shall comply with Sections 301, 307, and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1317 and 1342, and with regulations promulgated thereunder at 40 C.F.R. Part 403, and the Nebraska Environmental Protection Act, Neb. Rev. Stat. §81-1501 (Reissue 1999, Cum. Supp. 2004, Supp. 2005) *et seq.* and Nebraska Administrative Code, Title 19, Rules and Regulations Pertaining To The Issuance of Permits Under the National Pollutant Discharge Elimination System, and with the terms, conditions and requirements of applicable NPDES permits, including, but not limited to EPA NPDES Permit Number NE0049018 and any amendments, or modifications to Permit Number NE0049018.

13. Permits. Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section X (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

8

## VI. PROHIBITION ON TREATMENT OF M.G. WALDBAUM CO. WASTEWATER

14. From the Effective Date of this Consent Decree, Defendant shall not store, treat, or discharge any industrial waste from M.G. Waldbaum Co., except that pursuant to an existing contractual agreement between M.G. Waldbaum Co. and Defendant (included as Attachment A to this Consent Decree), until such time as M.G. Waldbaum Co.'s mechanical wastewater treatment facility is constructed and operational, M. G Waldbaum Co. is permitted to use lagoon I-7 and the discharge sampling building.

## VII. MONITORING AND RECORD KEEPING REQUIREMENTS

15. From the Effective Date of this Consent Decree, Defendant shall conduct the following monitoring of wastewater activities associated with the Facility:

a. Facility Monitoring: Defendant shall measure wastewater influent parameters, as required by EPA NPDES Permit Number NE0049018.

b. Pre-discharge Monitoring. Defendant shall perform pre-discharge monitoring, as required by EPA NPDES Permit Number NE0049018.

c. Discharge Monitoring. In addition to any monitoring that is required under EPA NPDES Permit Number NE0049018, Defendant shall maintain records of each discharge from the Facility that include the following information:

        i. date discharge commenced;

        ii. date discharge ceased;

        iii. identity of each cell that was discharged;

        iv. the total flow for each day during which the discharge occurred;

9

v.      the total flow for the discharge period; and

vi.     the date, time and location of each sample taken, the method of
        sample preservation, if applicable, and complete chain of custody
        information.

### VIII. REPORTING REQUIREMENTS

16.     Beginning thirty (30) days after the date of lodging this Consent Decree,
Defendant shall provide information and submit reports to the United States and the State
contacts identified in Paragraph 57 of this Consent Decree, as follows:

a.      Monthly Reporting. Within ten (10) days following the end of each
month, Defendant shall submit by facsimile or electronic mail to the EPA, Region VII and the
State a copy of all records for the month just ended of effluent flow measurements and Facility
influent flow measurements, as required by Paragraph 15, Subparagraphs a and b of this Consent
Decree.

b.      Discharge Reporting. Within thirty (30) days following the end of a
discharge from the Facility under NPDES Permit Number NE0049018, Defendant shall submit to
the EPA, Region VII and the State a report that includes all information required under Paragraph
15, Subparagraphs a, b, and c. In addition, Defendant shall include within the report a copy of all
laboratory reports showing the values of all pre-discharge and discharge monitoring required
pursuant to NPDES Permit Number NE0049018.

10

          c.      Reporting Pursuant to NPDES Permit. Defendant shall submit a copy of all reports required under NPDES Permit Number NE0049018 to the EPA, Region VII at the same time each such report is submitted to the State.

17.     If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree or of NPDES Permit Number NE 0049018, Defendant shall notify the EPA, Region VII and the State of such violation and its likely duration in writing within ten (10) business days of the day Defendant first becomes aware of the violation or the potential violation, with an explanation of the violation's likely cause and of the remedial steps taken, and/or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall include a statement to that effect in the report. Defendant shall diligently investigate to determine the cause of the violation and then shall submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) days of the day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the requisite notice for purposes of Section X (Force Majeure).

18.     In the case of any violation or other event that may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify the EPA, Region VII and the State orally or by electronic or facsimile transmission as soon as possible, but not later than twenty-four (24) hours after Defendant first knew of, or should have known of, the violation or event. Defendant shall take all such actions as directed by EPA or the State to abate the threat. This procedure is in addition to the requirements set forth in the preceding Paragraph.

19.     All reports shall be submitted to the persons designated in Section XV of this

Consent Decree (Notices).

20.     Each report submitted by Defendant under this Section shall be signed by an

authorized official, as defined at 40 C.F.R. § 122.22, of the submitting party and include the

following certification:

> I certify under penalty of law that I have examined and am familiar
> with the information submitted in this document and all attach-
> ments and that this document and its attachments were prepared
> either by me personally or under my direction or supervision as the
> responsible company official in a manner designed to ensure that
> qualified and knowledgeable personnel properly gathered and
> presented the information contained therein. I further certify,
> based on my personal knowledge or on my inquiry of those
> individuals immediately responsible for obtaining the information,
> that the information is true, accurate and complete. I am aware that
> there are significant penalties for submitting false information,
> including the possibility of fines and imprisonment for knowing
> and willful submission of a materially false statement.

This certification requirement does not apply to emergency or similar notifications if Defendant

proves to the satisfaction of EPA and the State that compliance would be impractical.

21.     The reporting requirements of this Consent Decree do not relieve Defendant of

any reporting obligations required by the Clean Water Act or implementing regulations, or by any

other federal, state, or local law, regulation, permit, or other requirement.

22.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

12

## IX.  STIPULATED PENALTIES

23.     Defendant shall be liable for Stipulated Penalties, 50% to the United States and

50% to the State of Nebraska, for violations of this Consent Decree as specified below, unless

excused under Section X (Force Majeure).  A violation includes failure to perform any obligation

required by the terms of this Consent Decree, including any work plan or schedule approved

under this Consent Decree, according to all applicable requirements of this Consent Decree and

within the specified time schedules established by or approved under this Consent Decree.

24.     Effluent Limits.  The following Stipulated Penalties shall accrue per violation per

day for each violation of any (applicable) requirement of Defendant's NPDES permit:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| Daily Effluent Limit | $ 100 |
| 7-Day Average Limit | $ 800 |
| 30-Day Average Limit | $ 2,000 |

25.     Monitoring and Record Keeping Requirements

a.     The following Stipulated Penalties shall accrue per violation per day for

each violation of the requirements identified in Subparagraph b:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1-30 days | $ 300 |
| 31-60 days | $ 700 |
| 61 or more days | $ 1,000 |

13

b. Monitoring and record keeping requirements subject to Stipulated Penalties under the provisions of Subparagraph a include Facility Monitoring pursuant to Subparagraph 15a, Pre-discharge Monitoring pursuant to Subparagraph 15b, and Discharge Monitoring pursuant to Subparagraph 15c.

26. Reporting Requirements. The following Stipulated Penalties shall accrue per violation per day for each violation of the reporting requirements of Section VIII of this Consent Decree:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1-30 days | $ 300 |
| 31-60 days | $ 700 |
| 61 or more days | $ 1,000 |

27. Stipulated Penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated Penalties shall accrue simultaneously for each individual violation of this Consent Decree. Defendant shall pay any Stipulated Penalty within thirty (30) days of receiving the United States' written demand.

28. Stipulated Penalties shall continue to accrue as provided in Paragraph 27, above, during any Dispute Resolution, with interest on accrued penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

14

     a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) days of the effective date of the agreement or the receipt of EPA's decision or order.

     b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

     c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within thirty (30) days of receiving the final appellate court decision.

29.     Defendant shall pay Stipulated Penalties for violations of NPDES Permit Number NE0049018 occurring between the date of lodging and the Effective Date of this Consent Decree within thirty (30) days of the Effective Date of this Consent Decree.

30.     Defendant shall, as directed by the United States, pay Stipulated Penalties owing to the United States in accordance with Section IV, Paragraph 9, above by certified or cashier's check in the amount due payable to the "U.S. Department of Justice," referencing DOJ Number 90-5-1-1-08346. Defendant shall pay Stipulated Penalties owing to the State in accordance with Section IV, Paragraph 10, above.

15

31.     If Defendant fails to pay Stipulated Penalties according to the terms of this
Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in
28 U.S.C. § 1961, accruing as of the date payment became due.

32.     Subject to the provisions of Section XIII of this Consent Decree (Effect of
Settlement/Reservation of Rights), the Stipulated Penalties provided for in this Consent Decree
shall be in addition to any other rights, remedies, or sanctions available to the United States for
Defendant's violation of this Consent Decree or applicable law. Where a violation of this
Consent Decree is also a violation of Sections 301, 307, or 402 of the Clean Water Act, 33
U.S.C. §§ 1311, 1317, or 1342, or regulations promulgated thereunder, Defendant shall be
allowed a credit, for any Stipulated Penalties paid, against any statutory penalties imposed, or
agreed to, for such violation.

## X. FORCE MAJEURE

33.     A "force majeure event" is any event beyond the control of Defendant, its
contractors and consultants, or any entity controlled by Defendant that delays the performance of
any obligation under this Consent Decree despite Defendant's best efforts to fulfill the
obligation. "Best efforts" includes anticipating any potential force majeure event and addressing
the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or
minimize any resulting delay to the greatest extent possible. Unanticipated or increased costs or
expenses associated with implementation of this Consent Decree and changed financial
circumstances shall not, in any event, be considered "force majeure" events. In addition, failure
to apply for a required permit or approval or to provide in a timely manner all information

16

required to obtain a permit or approval that is necessary to meet the requirements of this Consent Decree or failure of Defendant to approve contracts, shall not, in any event, be considered "force majeure" events. However, if a permitting authority fails to issue, renew or modify--or delays in issuing, renewing or modifying--a lawful permit, order or other action required for any part of the work under this Consent Decree, and Defendant has taken all actions necessary to obtain all such permits or approvals in accordance with paragraph 13 of this Consent Decree, Defendant is entitled to seek relief under the "force majeure" provisions of this Consent Decree.

34.     Defendant shall provide notice orally or by electronic or facsimile transmission as soon as possible, but not later than seventy-two (72) hours after the time Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event. Defendant shall also provide written notice, as provided in Section XV of this Consent Decree (Notices), within seven (7) days of the time Defendant first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); Defendant's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and Defendant's rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude Defendant from asserting any claim of force majeure.

35.     If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for Defendant to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other

17

obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XVIII of this Consent Decree (Modification).

36. If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by Defendant, the United States' position shall be binding, unless Defendant invokes Dispute Resolution under Section XI of this Consent Decree. In any such dispute, the provisions of Section XI (Dispute Resolution) shall apply and Defendant bears the burden of proving that each claimed force majeure event is a force majeure event; that Defendant gave the notice required by Paragraph 34; that the force majeure event caused any delay Defendant claims was attributable to that event; and that Defendant exercised best efforts to prevent or minimize any delay caused by the event.

## XI. DISPUTE RESOLUTION

37. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, such procedures shall not apply to actions by any Plaintiff to enforce obligations of the Defendant that have not been disputed in accordance with this Section.

38. Informal Dispute Resolution. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen on the day the Defendant hand delivers to each Plaintiff a written Notice of Dispute or on the day following delivery by overnight courier, or three days following delivery by U.S. Mail. Such Notice of Dispute shall state clearly the matter in dispute. The

18

period of informal negotiations shall not exceed twenty (20) days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fourteen (14) days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

39.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the Plaintiffs a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

40.     The United States shall serve its Statement of Position within forty-five (45) days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting that position and all supporting documents relied upon by the United States. The State of Nebraska may also serve a Statement of Position. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

41.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the Plaintiffs, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within twenty

19

(20) days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

42.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. The State of Nebraska may file its own motion in response to Defendant's motion. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

43.     In any dispute under this Paragraph, Defendant shall bear the burden of demonstrating that actions or positions taken are in accordance with and will assure Defendant's compliance with the terms, conditions, requirements and objectives of this Consent Decree and the Clean Water Act. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

44.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 28, above. If

Defendant does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

45. The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry to any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials to:

     a.    monitor the progress of activities required under this Consent Decree;

     b.    verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

     c.    obtain samples and, upon request, splits of any samples taken by Defendant or its representative, contractors, or consultants;

     d.    obtain documentary evidence, including photographs and similar data; and

     e.    assess Defendant's compliance with this Consent Decree.

46. Upon request, Defendant shall provide EPA and the State or their authorized representatives splits of any samples taken by Defendant. Upon request, EPA and the State shall provide Defendant splits of any samples taken by EPA or the State.

47. Until five (5) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all records and documents (including records or documents in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its

21

obligations under this Consent Decree. This record retention requirement shall apply regardless of any corporate or institutional document-retention policy to the contrary. At any time during this record-retention period, the United States or the State may request copies of any documents or records required to be maintained under this Paragraph.

48.     At the conclusion of the document-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least ninety (90) days prior to the destruction of any records or documents subject to the requirements of the preceding Paragraph, and, upon request by the United States or the State, Defendant shall deliver any such records or documents to EPA or the State. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, reports, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged.

49.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of

22

Defendant to maintain records or information imposed by applicable federal or state laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

50. This Consent Decree resolves the claims for civil penalties for the violations alleged in the Complaints filed by the United States and the State in this action.

51. This Consent Decree shall not be construed to prevent or limit the rights of the United States, or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 50 above.

52. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, or permits. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. § 1251, *et seq.*

53. This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

23

54.     This Consent Decree shall not be construed to create rights in, or grant any cause
of action to, any third party not party to this Consent Decree.

55.     The United States and the State reserve all legal and equitable remedies available
to enforce the provisions of this Consent Decree, except as expressly stated herein. The United
States and the State further reserve all legal and equitable remedies to address any imminent and
substantial endangerment to the public health or welfare or the environment arising at, or posed
by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or
otherwise.

## XIV. COSTS

56.     The Parties shall bear their own costs of this action, including attorneys' fees,
except that the United States and the State shall be entitled to collect the costs incurred in any
action necessary to collect any portion of the civil penalty or any stipulated penalties due but not
paid by Defendant.

## XV. NOTICES

57.     Unless otherwise specified herein, whenever notifications, submissions, or
communications are required by this Consent Decree, they shall be made in writing and
addressed as follows:

**24**

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
PO Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ Number 90-5-1-1-08346

To EPA:

Paul T. Marshall, P.E.
Water, Wetlands and Pesticides Division
U.S. Environmental Protection Agency, Region VII
901 North 5th Street
Kansas City, Kansas 66101

and

Elizabeth Huston
Office of Regional Counsel
U.S. Environmental Protection Agency, Region VII
901 North 5th Street
Kansas City, Kansas 66101

To the State:

Steven J. Moeller
Attorney, NDEQ Legal Services
Nebraska Department of Environmental Quality
1200 N Street, Suite 400
PO Box 98922
Lincoln, NE 68509-8922

and

25

Jodi M. Fenner
Assistant Attorney General
Chief, Agriculture, Environment, and Natural Resources Division
2115 State Capitol Building
Lincoln, Nebraska 68509-8920

To Defendant:

Jim Litchfield
City Administrator
City of Wakefield
405 Main Street
P.O. Box 178
Wakefield, NE 68784

and

M. Theresa Miner
Assistant City Attorney
405 Main Street
P.O. Box 178
Wakefield, NE 68784-0178

and

Mark A. Fahleson, Esq.
Rembolt Ludtke LLP
1201 Lincoln Mall, Suite 102
Lincoln, NE 68508

58.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

59.     Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

26

## XVI. EFFECTIVE DATE

60.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XVII. RETENTION OF JURISDICTION

61.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XI and XVIII, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. MODIFICATION

62.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

## XIX. TERMINATION

63.     After Defendant has complied with the requirements of the Clean Water Act, NPDES Permit Number NE0049018, and this Consent Decree for a period of thirty-six (36) months after the Effective Date of this Consent Decree, provided that Defendant has paid the civil penalties, and any accrued Stipulated Penalties as required by this Consent Decree, Defendant may serve upon the United States and the State a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

27

64.     Following receipt by the United States and the State of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has complied with the requirements for termination of this Consent Decree. If the United States, after consultation with the State, agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

65.     If the United States, after consultation with the State, does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section XI of this Consent Decree. However, Defendant shall not seek Dispute Resolution of any dispute, under Paragraph 39 of Section XI, until ten (10) days after service of its Request for Termination.                    XX. PUBLIC PARTICIPATION

66.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice.

28

## XXI. SIGNATORIES/SERVICE

67. The undersigned representatives of the City of Wakefield certify that they are authorized to enter into this Decree and to execute and legally bind the City of Wakefield to the terms and conditions of this Decree and meet the requirements for authorized signatory found in 40 C.F.R. § 122.22.

68. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

69. Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

70. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII. INTEGRATION

71. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

29

## XXIII. FINAL JUDGMENT

72.     Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute a final judgment of the Court as to the United States, the State, and
Defendant.


Upon execution of this document, the original Consent Decree shall be returned to the
United States Attorney's Office and a copy of the Consent Decree shall be maintained in the
Clerk's Office.

SO ORDERED THIS *23* DAY OF *MAY*        , 2006.

UNITED STATES DISTRICT JUDGE

30

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: _____

ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environmental and Natural Resources Division
United States Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044

Date:  1-5-07

ERIKA M. ZIMMERMAN
Trial Attorney, Oregon Bar No. 05500
Environmental Enforcement Section
Environmental and Natural Resources Division
United States Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 514-5270
Fax: (202) 514-4180
erika.zimmerman@usdoj.gov

FOR THE UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF NEBRASKA:

JOE W. STECHER
United States Attorney
District of Nebraska

Date: 1/8/07

LAURIE A. KELLY
Assistant United States Attorney, Mass. Bar No. 557575
District of Nebraska
1620 Dodge Street
Suite 1400
Omaha, Nebraska 68102-1506
Telephone: (402) 661-3700
Fax: (402) 661-3081
laurie.kelley@usdoj.gov

FOR PLAINTIFF U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION VII:

Date: 10/31/2006

JOHN B. ASKEW
Regional Administrator
U.S. Environmental Protection Agency, Region VII
901 N. 5th Street
Kansas City, Kansas 66101

Date: 10/25/2006

ELIZABETH HUSTON
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region VII
901 N. 5th Street
Kansas City, Kansas 66101

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Date:  11/7/06

MARK POLLINS
Director, Water Enforcement Division (2243A)
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C.  20460

FOR PLAINTIFF STATE OF NEBRASKA:

JON BRUNING
Attorney General of Nebraska

Date: October 26, 2006

JODI M. FENNER
NE Bar No. 22038
Assistant Attorney General
Chief, Agriculture, Environment, and
Natural Resources Division
2115 State Capitol Building
Lincoln, Nebraska 68509-8920
Telephone: (402) 471-2682
Fax: (402) 471-2957

NATALEE J. HART
NE Bar No. 22716
Assistant Attorney General
Agriculture, Environment, and
Natural Resources Division
2115 State Capitol
Lincoln, NE  68509

FOR DEFENDANT THE CITY OF WAKEFIELD, NEBRASKA:

Date:  __11-2-06__

Mayor
City of Wakefield

Agent Authorized to Accept Service on Behalf of the City of Wakefield, Nebraska , Relating to this Consent Decree:

Name:  CITY CLERK
Address:  P.O. BOX 178, WAKEFIELD, NE 68784
Phone Number: 402-287-2080
Email: WAKECLERK @ HUNTELNET

# Attachment A

## AGREEMENT FOR OPERATION AND USE OF THE
## INDUSTRIAL WASTEWATER LAGOON SYSTEM
## WAKEFIELD, NEBRASKA

This Agreement, dated as of _____, 2005, is made between the CITY OF WAKEFIELD, NEBRASKA ("the City") and M. G. WALDBAUM COMPANY, a Nebraska corporation ("the Company").

WHEREAS, the Company's industrial-process wastewater is currently treated at a City-owned, Company-funded facility that is comprised of nine separate lagoon cells, along with associated force mains and industrial lift station ("Industrial Lagoon System");

WHEREAS, all other wastewater generated in the city (everything but the Company's industrial-process wastewater) is treated at a City-owned system comprised of five separate lagoon cells ("Municipal Lagoon System");

WHEREAS, the City plans to issue bonds, payable solely from payments made by the Company to the City, to construct a new mechanical wastewater treatment facility that will be operated by the Company and used to treat the Company's industrial-process wastewater ("New Industrial Facility");

WHEREAS, the Company has applied to the Nebraska Department of Environmental Quality ("NDEQ") for, and expects to receive, a National Pollutant Discharge Elimination System permit to discharge treated wastewater from the New Industrial Facility under final discharge permit limits, and, prior to completion of the New Industrial Facility, to discharge treated wastewater from the Industrial Lagoon System under interim discharge limits ("Company's New NPDES Permit");

WHEREAS, after the New Industrial Facility is constructed and operating, the Company desires to continue to use the Industrial Lagoon System to carry out its obligations to treat wastewater by providing temporary storage of the Company's partially treated wastewater, and the City desires to use cell I-7 of the Industrial Lagoon System and incorporate it into the Municipal Lagoon System, thereby allowing for expansion of the City's system.

THEREFORE, in consideration of the Company's financing of the New Industrial Facility and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following terms:

### A.   Transfer of a Portion of Industrial Lagoon System to Company

1.   Purchase by Company. On or before the effective date of the Company's New NPDES Permit, the Company shall purchase and the City shall sell and transfer all right, title and interest in the Property. The purchase price for the Property shall be One Dollar ($1.00), due and payable at Closing.

a.   "Property" defined. For purposes of this Agreement, "Property" shall mean the Industrial Lagoon System without the Excluded Property.

1

b.      "Excluded Property" Defined.     For purposes of this Agreement,
"Excluded Property" shall mean cell I-7 in the Industrial Lagoon System, such right-of-way
within the Industrial Lagoon System deemed necessary by the City to incorporate cell I-7 into
the Municipal Lagoon System, the existing discharge sampling building and the discharge flow
meter housed in the discharge sampling building.

2.      Company Use of I-7 and Discharge Sampling Building.   The parties agree that
until such time as the New Industrial Facility is operating, the Company will be allowed to use,
at no charge, cell I-7 and the discharge sampling building (along with the discharge flow meter
housed therein) in its interim operation of the Industrial Lagoon System pursuant to the terms of
the Company's New NPDES Permit.

3.      Survey.   Prior to Closing, the City and the Company shall cause the Industrial
Lagoon System, the Property and the Excluded Property to be surveyed by a licensed surveyor at
the Company's expense.   Such survey shall, at a minimum, accurately delineate the respective
boundaries of the Property and Excluded Property as agreed upon by the City and Company, and
provide a legal description and acreage measurement for each.   The survey shall be incorporated
into this Agreement as if set forth herein.

4.      Closing.   The closing shall be on or before the effective date of the Company's
New NPDES Permit (the "Closing"), at a place and time to be mutually determined and agreed-
upon.

5.      Title; Delivery of Deed.   At Closing, the City shall convey its right, title and
interest in the Property by a quit claim deed to the Company.

6.      Real Estate Taxes and Assessments.   The Company shall be fully responsible for
and pay all real estate taxes and other taxes and assessments levied and assessed against the
Property after Closing.   However, commencing on the effective date of the Company's New
NPDES Permit, the City will cease invoicing the Company for monthly charges for industrial
sewer usage or industrial wastewater treatment (the total of such charges currently being $4,400
per month).

7.      Expenses.   The Company shall be responsible for all documentary transfer taxes,
survey costs, closing costs, attorneys fees and other costs and fees incurred by either party
arising out of the transfer of the Property to the Company.

8.      Representations and Warranties.   The City will make no representations or
warranties with respect to the Property, and the Property will be sold "as is."

9.      Indemnification by the Company.   The Company agrees to release, indemnify,
defend and hold the City, its elected and appointed officials, and employees harmless from and
against any liability, damage, claim, penalty, fine, judgment or settlement of any nature or kind,
including, but not limited to, the payment of all reasonable costs and attorneys' fees, whether
made, instituted, or asserted by any other person or governmental agency, relating to or arising

2

out of the acts or omissions of the City, its elected and appointed official, and employees in connection with the Property on or after the Closing. In any matter where the Company is required to defend the City pursuant to this paragraph, the City agrees to cooperate with the Company in such defense.

## B. Company's Operation of Industrial Lagoon System After Transfer

The Company shall be responsible for obtaining all permits and approvals necessary to operate the Property, either as a wastewater treatment facility or as a wastewater storage facility. It is expressly agreed that after Closing, the Company will be solely responsible for any violations of such permits, approvals or other legal requirements of operating the Industrial Lagoon System.

## C. Potential Odor Issues

The parties acknowledge that the Industrial Lagoon System has been a source of odor over the years. However, it is the expectation of the parties that the Industrial Lagoon System will cease to be a significant source of odor after the New Industrial Facility is constructed, after the Industrial Lagoon System is no longer used for treatment of industrial wastewater, and after sludge from the treatment of industrial wastewater breaks down, likely in the spring following completion of the New Industrial Facility. The parties wish to work together and cooperate with each other to address any odor conditions attributable to the Industrial Lagoon System or the Property, understanding that the Industrial Lagoon System needs some time to adjust after years of use as a wastewater treatment system, and also understanding that complete odor elimination may not be possible.

1.      From the effective date of this Agreement and continuing for one year after the New Industrial Facility begins operating, if the City receives any complaints about odor from the Industrial Lagoon System or the Property, the City will forward such complaints, in writing, to the Company's plant manager in Wakefield. The Company shall investigate the cause of the odor, submit a response to the City, and exercise reasonable efforts to resolve the complaint in a timely manner.

2.      After the New Industrial Facility has been operating for one year, if the City receives any complaints about odor from the Property, the City may, at its option, commence the following process:

   a.      The City, at its own expense, shall confirm that the Company's use of the Property is the source of the odor.

   b.      If the City confirms that the Company's use of the Property is the source of the odor, then two professional engineers experienced and knowledgeable as to lagoon systems, one selected by the City and one selected by the Company, will confer and determine whether there is a reasonable, cost-effective measure that can be taken to appreciably reduce the odor. The Company will pay for half of the cost of the City's professional engineer.

3

c.    The Company will, at its sole expense, implement the measure identified by the parties' engineers.

## D.    City Reacquisition of All or Portions of the Property

Nothing herein shall limit or otherwise hinder the City's right of eminent domain under Nebraska law with respect to the Property.

## E.    Other Provisions

1.    Notwithstanding any other provision of this Agreement, the Company will continue to make payments to retire the debt incurred by the City to finance the Industrial Lagoon System expansion pursuant to that certain Memorandum of Understanding, dated April 26, 2001, by and between the City and Michael Foods, as the parent of the Company.

2.    Notwithstanding any other provision of this Agreement, the agreement between the City and the Company effective June 23, 2004, relating to the Industrial Lagoon System shall remain in full force and effect.

3.    All Company-purchased equipment now used in connection with the Industrial Lagoon System, including but not limited to meters, analytical devices, aerators and anaerobic covers, is, and will continue to be, property of the Company, and the Company may use or remove such equipment in its sole discretion.

4.    It is expressly agreed that any costs or approvals associated with connecting or integrating cell I-7 with the Municipal Lagoon System, including costs associated with design and construction of piping modifications, shall be the sole responsibility of the City, and that any costs or approvals associated with closing or otherwise disconnecting cell I-9 from cell I-7 as of the Closing shall be the sole responsibility of the Company.

5.    This Agreement shall benefit and bind the legal representatives, assignees, and successors of the respective parties. This Agreement may be assigned by the Company to any successor in ownership of the Company's stock or assets upon prior written consent of the City, which consent shall not be unreasonably withheld.

6.    In the event that any provision contained in this Agreement is breached by either party and thereafter waived by the other party, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder.

7.    In the event that any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render invalid or unenforceable any other provisions hereof.

8.    This instrument embodies the whole agreement of the parties with respect to the subject matter hereof. No promises, terms, statements, conditions, inducements or obligations made by either party or agent of either party with respect to the subject matter of this Agreement that are not contained in this Agreement shall be valid or binding.

4

9.    Should any portion of this Agreement be renegotiated resulting in additions, deletions, and/or modifications, the remainder of this Agreement shall be binding and effective to the extent that it is not specifically inconsistent with renegotiated terms of this Agreement.

CITY OF WAKEFIELD, NEBRASKA

By: _____
Its: _____

STATE OF NEBRASKA          )
                           ) ss.
COUNTY OF DIXON            )

The foregoing instrument was acknowledged before me this _11TH_ day of August, 2005, by Mayor Jim Clark, on behalf of the City of Wakefield.

(SEAL)

_____
Notary Public

M.G. WALDBAUM COMPANY

By: _____
Its: _____

STATE OF ~~NEBRASKA~~ Minnesota or
COUNTY OF ~~DIXON~~ Hennepin ) ss. or

The foregoing instrument was acknowledged before me this _29th_ day of ~~August~~ September, 2005, or by _John Reedy_, on behalf of the M.G. Waldbaum Company.

CAROLE A LEONARD
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2010

_____
Notary Public

5